**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-6501 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MANTECH INTERNATIONAL | : **SECURITIES EXCHANGE ACT OF** |
| CORPORATION, KEVIN M. PHILLIPS, | : **1934** |
| RICHARD L. ARMITAGE, MARY K. | : |
| BUSH, BARRY G. CAMPBELL, RICHARD | : **JURY TRIAL DEMANDED** |
| J. KERR, LT. GEN. KENNETH A. | : |
| MINIHAN, USAF RET., and PETER | : |
| LAMONTAGNE, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against ManTech International Corporation ("ManTech or the "Company") and the members ManTech' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of ManTech by affiliates of The Carlyle Group Inc. ("Carlyle").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on July 1, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Moose Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Moose Bidco, Inc. ("Parent"), will merge with and into ManTech with ManTech surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 13, 2022 (the "Merger Agreement"), each ManTech stockholder will receive $96.00 in cash (the "Merger Consideration") for each ManTech share owned.

3. As discussed below, Defendants have asked ManTech' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ManTech' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because ManTech trades on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of ManTech stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Kevin M. Phillips has served as a member of the Board since 2018 and is the Chairman of the Board, and President and Chief Executive Officer of the Company.

11. Individual Defendant Richard L. Armitage has served as a member of the Board since 2005.

12. Individual Defendant Mary K. Bush has served as a member of the Board since 2006.

13. Individual Defendant Barry G. Campbell has served as a member of the Board since 2002.

14. Individual Defendant Richard J. Kerr has served as a member of the Board since 2002.

15. Individual Defendant Lt. Gen. Kenneth A. Minihan, USAF (Ret.) has served as a member of the Board since 2006.

16. Individual Defendant Peter LaMontagne has served as a member of the Board since May 2019.

17. Defendant ManTech is a Delaware corporation and maintains its principal offices at 2251 Corporate Park Drive, Herndon, VA 20171. The Company's stock trades on the NASDAQ Global Market under the symbol "MANT."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

20. ManTech provides technology solutions and services for U.S. defense, intelligence community, and federal civilian agencies worldwide. The Company offers cyber solutions and services, including security operations, threat intelligence, incident response and forensics, boundary defense, security systems engineering, infrastructure security, and computer forensics and exploitation. It also provides IT and digital modernization, cloud solutions, managed and integrated services management, IT-as-a services, edge computing, user engagement, and experience and digital workplace transformation; and data collection and management, predictive analytics, analytics automation, data science, and data fusion and visualization services. In addition, the Company offers requirements analysis; planning, design, implementation,

integration, and enhancement; testing, deployment, maintenance, and quality assurance; application migration and modernization; application development; and documentation and configuration management services, as well as intelligent systems engineering services, including platform innovation and modernization, digital and models-based systems engineering, reliability and maintainability, modeling, simulation and analysis, systems lifecycle support, human factors and safety engineering, systems architecture, and engineering and test and evaluation. Further, it provides professional and technical solutions, and mission support services; command-and-control infrastructure, intelligence, and surveillance and reconnaissance platforms and sensors, as well as the communication, dissemination, and analysis of data; and mission solutions, including C5ISR, training, logistics, supply chain management and sustainment, consulting, and mission planning and execution. The Company was founded in 1968 and is headquartered in Herndon, Virginia.

21. On May 16, 2022, the Company announced the Proposed Transaction:

> HERNDON, Va., May 16, 2022 (GLOBE NEWSWIRE) -- ManTech International Corporation (Nasdaq: MANT) ("ManTech" or the "Company"), a leading provider of innovative technologies and solutions for mission-critical national security programs, today announced that it has entered into a definitive agreement to be acquired by funds managed by global investment firm Carlyle (NASDAQ: CG) in an all-cash transaction with a total enterprise value of approximately $4.2 billion.
>
> Under the terms of the transaction, ManTech shareholders will receive $96.00 per share in cash, which represents a 32% premium to ManTech's unaffected closing share price of $72.82 on February 2, 2022, the last trading day prior to published media reports regarding a potential strategic process for the Company, and a 17% premium to the closing stock price of $81.97 on May 13, 2022.
>
> "We have always admired ManTech's unwavering commitment to support national security customers and their critical missions through differentiated capabilities and technology solutions. ManTech's talented employees and leadership team have built a remarkable Company with strong market positions across the federal government," said Dayne Baird, a Managing Director on

Carlyle's Aerospace & Government Services team. "Through this partnership, we look forward to leveraging our sector expertise and resources to accelerate growth and innovation and to drive greater value for customers and employees."

"This announcement is an important milestone for ManTech and a testament to our growth and the leadership position we have built since our founding by George Pedersen more than 50 years ago," said ManTech Chairman, Chief Executive Officer and President Kevin M. Phillips. "Following a comprehensive review of strategic alternatives, our Board determined that this transaction is in the best interest of our shareholders and provides them with the most compelling value maximization outcome, offering liquidity at a significant premium. We look forward to leveraging Carlyle's deep knowledge and experience investing in and growing companies, as we deliver stronger outcomes for our customers and increased opportunities for our employees."

**Transaction Details**

The transaction was unanimously approved by ManTech's Board of Directors, which recommends that ManTech shareholders vote in favor of the transaction. The transaction is expected to close in the second half of calendar 2022, subject to approval by ManTech shareholders, receipt of regulatory approvals and other customary closing conditions.

Stockholders holding shares of common stock representing 49.2% of the current outstanding voting power of the ManTech common stock have entered into a voting agreement pursuant to which they have agreed, among other things, to vote their shares of common stock in favor of the transaction, subject to certain conditions.

**Advisors**
Goldman Sachs & Co. LLC is serving as exclusive financial advisor and King & Spalding LLP is serving as legal counsel to ManTech in connection with the transaction.

Robert W. Baird & Co. is serving as financial advisor and Latham & Watkins LLP is serving as legal advisor to Carlyle in connection with the transaction.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that ManTech's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

23.     On July 1, 2022, ManTech filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by ManTech management and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that ManTech management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the

most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and EBIT, but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the NTM/EV/EBITDA range of 11.5x to 14.5x; (ii) the historical NTM EV/EBITDA multiples for the Company; (iii) the Company's projected net debt for each of the fiscal years 2022, 2023, and 2024; (iv) the projected year-end fully-diluted outstanding shares of Company common stock; (v) the cumulative dividends per share expected to be paid to the Company stockholders in the second, third, and fourth fiscal quarters of 2022 and each of the fiscal years 2023 and 2024; and (v) the inputs and assumptions underlying the illustrative discount rate of 10.0%.

30. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimates of unlevered free cash flow for the Company for the years 2022 through 2026 and the line items used to calculate the unlevered free cash flows; (ii) the range of illustrative terminal values for ManTech; (iii) the inputs and assumptions underlying the implied exit terminal year EV/EBITDA multiples ranging from 12.5x to 16.0x; (iv) the inputs and assumptions underlying the use of the range of discount rates of 9.00% to 10.00%; (v) the Company's weighted average cost of capital; (vi) the net debt of the Company as of March

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31, 022; and (vii) the number of fully diluted shares of Company common stock outstanding as of May 20, 2022.

31.     With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

32.     With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

33.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of ManTech within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of ManTech, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of ManTech, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of ManTech, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 1, 2022         **MELWANI & CHAN LLP**

                By: */s/*
                   Gloria Kui Melwani (GM5661)
                   1180 Avenue of the Americas, 8th Fl.
                   New York, NY 10036
                   Telephone: (212) 382-4620
                   Email: gloria@melwanichan.com

                   *Attorneys for Plaintiff*